IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOON LLC *d/b/a* AJIN USA, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   CIVIL ACT. NO. 2:22-cv-81-ECM |
| | )                    [WO] |
| MARTIN J. WALSH, Secretary of Labor, *et al.*, | ) |
| | ) |
|     Respondents. | ) |

## MEMORANDUM OPINION and ORDER

### I.  INTRODUCTION

This mandamus action arises out of a set of citations the Occupational Safety and Health Administration ("OSHA") issued to Petitioner Joon, LLC *d/b/a* Ajin USA ("Ajin") in December 2016 based on a workplace incident in June 2016. Administrative proceedings concerning these citations commenced in 2017 and remain pending before the Occupational Safety and Health Review Commission ("OSHRC" or "Commission"). A trial before an Administrative Law Judge ("ALJ") appointed by the Commission is set for May 9–27, 2022.

On February 25, 2022, Ajin filed a Petition for Writ of Mandamus in this Court against Respondents Martin J. Walsh, the Secretary of Labor for the United States Department of Labor (the "Secretary"); John B. Gatto, the ALJ; and the Commission (collectively "Respondents"). (Doc. 1). On April 4, 2022, Ajin filed an Amended Petition for Writ of Mandamus. (Doc. 9). Ajin also filed a motion to stay the May 9–27 administrative trial. On April 29, 2022, the Respondents filed a motion to dismiss and a

response in opposition to the motion to stay in which they argued, among other things, that the Court lacks subject matter jurisdiction over this action. The Court then gave Ajin an opportunity to file a brief addressing whether the Court has jurisdiction. For the reasons explained below, the Court concludes that it lacks subject matter jurisdiction over this action, and thus the Amended Petition is due to be dismissed without prejudice.

## II. LEGAL STANDARD

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (per curiam) (quoting *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969)). "The test for [mandamus] jurisdiction is whether mandamus would be an appropriate means of relief." *Id.* at 1258 (citation omitted). "Mandamus is appropriate only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (per curiam). Failure to satisfy these requirements constitutes a failure to establish mandamus jurisdiction. *See Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1298 (11th Cir. 2004) (holding that petitioner had another adequate remedy and thus the district court did not have mandamus jurisdiction; remanding "with instructions to dismiss for want of subject-matter jurisdiction"); *Hakki v. Sec'y, Dep't of Veterans Affairs*, 7 F.4th 1012, 1037–38 (11th Cir. 2021) (holding that petitioner failed to establish mandamus jurisdiction because

2

he failed to establish a clear right to relief or a clear duty to act). As the party seeking mandamus, Ajin "has the burden of demonstrating that his right to the writ is clear and indisputable." *Serrano*, 655 F.3d at 1263. Thus, Ajin cannot resort to mandamus where there is an alternative "avenue of relief," such as "where a statutory method of appeal has been prescribed." *Lifestar*, 365 F.3d at 1295 (citations omitted).

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. It is "a residual source of authority to issue writs that are not otherwise covered by statute." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). However, the All Writs Act "does not create any substantive federal jurisdiction"; rather, "it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1263 (11th Cir. 2021) (citation omitted). A party seeking mandamus under the All Writs Act must satisfy three requirements:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017) (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)).[1]

---

[1] The All Writs Act also codifies the "common-law writ of mandamus against a lower court." *Cheney*, 542 U.S. at 380.

### III.  BACKGROUND

**A.  Statutory and Regulatory Background**

In 1970, Congress enacted the Occupational Safety and Health Act (the "Act"). Pub. L. No. 91-956, 84 Stat. 1590 (Dec. 29, 1970).  Congress's "purpose and policy" was "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources" by, among other things, "authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions." 29 U.S.C. § 651(b).

The Act empowered the Administrator of OSHA, as delegee of the Secretary of Labor, to promulgate workplace safety regulations, investigate violations, issue citations, and pursue civil penalties. *See id.* §§ 655, 657, 658, 659, 666.  As relevant here, Congress has contemplated three levels of violations of OSHA standards: willful, serious, and other-than-serious. *Id.* § 666.

The Act also created OSHRC to adjudicate alleged violations of OSHA standards. *Id.* § 661(a).  If an employer contests a citation for violations of OSHA standards, an ALJ initially presides over the contested case and makes a determination based on a trial-like evidentiary hearing. *Id.* § 661(j). Parties can then seek discretionary review before the Commission. *Id.*  If not reviewed by the Commission, the ALJ's decision becomes the final order of OSHRC after 30 days. *Id.*

Congress empowered the Commission to promulgate procedural rules governing its

4

proceedings and provided that, in the absence of a different rule, its proceedings are governed by the Federal Rules of Civil Procedure. *Id.* § 661(g).  As relevant here, the Commission's rules provide that "[d]epositions . . . shall be allowed only by agreement of all the parties or on order of the Commission or the [ALJ] following the filing of a motion of a party stating good and just reasons." 29 C.F.R. § 2200.56(a).  Section 2200.52(b) governs the scope of document discovery and adopts a "proportional to the needs of the case" standard based on Federal Rule of Civil Procedure 26(b)(1).  A party may petition the Commission for discretionary review of the ALJ's interlocutory decision. *See* 29 C.F.R. § 2200.73.  "The petition is denied unless granted within 30 days of the date of receipt by the Commission's Executive Secretary." *Id.*

Judicial review of final OSHRC orders lies exclusively in the courts of appeals. Persons aggrieved by an OSHRC final order "may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office"—here, the Eleventh Circuit—"or in the Court of Appeals for the District of Columbia Circuit." 29 U.S.C. § 660(a).

B.  **Factual and Procedural Background**

Ajin is a Korean-owned automotive parts supplier that has operated a facility in Cusseta, Alabama, since early 2008.  In June 2016, a temporary employee at Ajin's Cusseta facility was killed while working on a piece of machinery.  OSHA inspected the facility and later issued citations to Ajin which largely focused on failures to follow "lockout/tagout" procedures on the day the employee was killed.  According to Ajin, an OSHA representative initially informed Ajin that Ajin could expect a citation for five

serious violations of OSHA standards. However, in December 2016, OSHA issued Ajin a citation for two serious violations with a proposed monetary penalty of $21,557; a citation for twenty willful violations with a proposed monetary penalty of $2,494,180; and a citation for one other-than-serious violation with no proposed monetary penalty, for a total proposed monetary penalty of over $2.5 million. (Docs. 9-10, 9-11, & 9-12). Ajin contends that OSHA treated Ajin more harshly than other non-Korean-owned companies with respect to the number and characterization of the violations and that this disparate treatment constitutes unlawful race-based agency enforcement.

Ajin alleges that additional circumstances suggest that OSHA harbored racial animus towards Korean-owned companies. Two days after OSHA issued Ajin the citations, OSHA issued a news release concerning the citations in which Assistant Secretary of Labor Dr. David Michaels, then-head of OSHA, criticized Hyundai and Kia, Korean-owned original equipment manufacturers ("OEMs") with whom Ajin works, for their high production targets. The news release also describes Ajin as "[b]ased in Korea." (Doc. 9 at 6). Additionally, in a March 2017 interview with Bloomberg, Dr. Michaels said that he had visited Hyundai and Kia executives while attending a conference in Seoul to "warn" them that OSHA had found safety violations at many of their Korean-owned suppliers in the Southeast. (*Id.* at 6–7). The Bloomberg article also discusses the death of the temporary employee at Ajin's Cusseta facility. Ajin further alleges that, under Dr. Michaels, OSHA had a "regional emphasis program" applicable only to suppliers in "Region 4, where virtually all Korean-owned suppliers were located," and "not to Region 5, where the Big Three Caucasian-owned automotive OEMs (Form, GM, and Chrysler)

6

and their suppliers" were located. (*Id.* at 8).  According to Ajin, the regional emphasis program expands the scope of OSHA investigations undertaken on a supplier's premises.

Ajin contested the citations, which triggered a hearing before an ALJ appointed by the Commission. *See* 29 U.S.C. § 661(j).  The administrative proceedings are styled *Secretary of Labor, U.S. Department of Labor v. Joon LLC d/b/a Ajin USA*, OSHRC Docket No. 17-0053.  During the discovery phase, Ajin sought to depose Billie Kizer and Mike Shea, two OSHA officials who allegedly have firsthand knowledge about OSHA's decision to change the characterization of Ajin's violations from serious to willful.  The Secretary objected to the depositions.  Ajin moved the ALJ for permission to take the depositions, which the ALJ denied on two grounds: (1) the officials lacked firsthand knowledge of the facts; and (2) the officials' testimony implicated the deliberative process privilege and thus was not discoverable.  Ajin petitioned the Commission for discretionary review of the ALJ's decision, which was denied by operation of 29 C.F.R. § 2200.73.

During discovery, Ajin also served on the Secretary Requests for Production of Documents.  As relevant here, the Secretary objected to four of the requests: Requests Nos. 15, 16, 17, and 18. (Doc. 9 at 15).  Request No. 15 sought the "power point presentation respecting the inspection covering June 20, 2016," which had been prepared by OSHA officials.  Request No. 16 sought emails and other communications by certain OSHA officials, between 2016 and the present, "regarding the inspection culminating in the December 12, 2016 citations of Ajin or any other citation against Ajin." (*Id.*).  Request No. 17 sought internal OSHA documents and communication relating to OSHA"s "Region 4 automotive emphasis program." (*Id.*).  Request No. 18 sought documents "respecting the

7

creation and discontinuation of the partnership between HMMA[2] and its Tier 1 suppliers and Dr. David Michaels' role in either." (*Id.*).  Ajin filed a motion to compel, which the ALJ granted in part and denied in part.  The ALJ required the Secretary to produce a subset of documents responsive to Request No. 16—documents regarding the inspection culminating in the December 2016 citations—but denied Ajin's motion as to the remaining requests on the grounds that the documents were either protected by the attorney-client privilege or were irrelevant.  The ALJ reasoned that the power point sought in Request No. 15 was attorney-client privileged because it had been "screened by attorneys."  The ALJ further reasoned that the remaining documents were irrelevant to the issues in the case, which the ALJ described as whether Ajin violated OSHA standards and whether those violations were willful.  Ajin petitioned the Commission for discretionary review of the ALJ's decision, which was denied by operation of 29 C.F.R. § 2200.73.

On February 2, 2022, Ajin filed a Petition for Writ of Mandamus in the Eleventh Circuit, seeking an order requiring the ALJ to allow Ajin to depose Ms. Kizer and Mr. Shea. *In re Joon LLC d/b/a Ajin USA*, No. 22-10349 (11th Cir. Feb. 2, 2022); (doc. 9-17).  The Eleventh Circuit denied the petition *sua sponte*. *In re Joon LLC d/b/a Ajin USA*, No. 22-10349 (11th Cir. Feb. 8, 2022); (doc. 9-18).  The Eleventh Circuit concluded that "[m]andamus relief is not warranted in this case," reasoning that it "lack[ed] jurisdiction to order a federal agency to act." (Doc. 9-18 at 4).  The Eleventh Circuit further stated that

---

[2] Ajin does not explain what HMMA is.  It appears to the Court that HMMA may be an abbreviation for Hyundai Motor Manufacturing Alabama, LLC. *See* Hyundai Motor Manufacturing Alabama, https://www.hmmausa.com/ (last visited May 4, 2022).

Ajin "has or had the adequate alternative remedy of filing a petition for a writ of mandamus in the district court." (*Id.* at 5).

On February 25, 2022, Ajin filed a Petition for Writ of Mandamus in this Court, requesting that the Court order the ALJ to (1) vacate his order denying Ajin's motion for permission to depose Billie Kizer and Mike Shea, and (2) grant Ajin's motion for permission to depose Ms. Kizer and Mr. Shea. (Doc. 1). On April 4, 2022, Ajin filed an Amended Petition requesting that the Court also order the ALJ to order the production of the documents sought by Ajin and denied by the ALJ. (Doc. 9). On April 22, 2022, Ajin filed a motion to stay, requesting that the Court stay the administrative trial set for May 9–27, 2022.

### IV. DISCUSSION

Ajin seeks to invoke this Court's jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651. The Court will begin with the Mandamus Act.

**A. The Mandamus Act**

Ajin asserts that the Court has subject matter jurisdiction under § 1361 because, according to Ajin, the Eleventh Circuit said as much. That is incorrect. In its order denying Ajin's Petition for Writ of Mandamus, the Eleventh Circuit reasoned that Ajin "has or had an adequate alternative remedy of *filing* a petition for a writ of mandamus in the district court," citing § 1361. (Doc. 9-18 at 5) (emphasis added). The Eleventh Circuit did not determine whether the district court could properly exercise jurisdiction over such a petition. To determine whether the Court has mandamus jurisdiction, the Court must

9

determine "whether mandamus would be an appropriate means of relief." *Cash*, 327 F.3d at 1258 (citation omitted). Failure to satisfy the requirements for mandamus relief constitutes a failure to establish mandamus jurisdiction. *See Lifestar*, 365 F.3d at 1298; *Hakki*, 7 F.4th at 1037–38. The Court now turns to whether Ajin has satisfied the requirements for mandamus relief.

Ajin contends that it is entitled to mandamus relief and thus has invoked this Court's subject matter jurisdiction under § 1361. Ajin argues that it has a clear right to relief because the ALJ's order denying Ajin's requested depositions contravenes recent Eleventh Circuit precedent, *Akridge v. Alfa Mutual Insurance Co.*, 1 F.4th 1271 (11th Cir. 2021); the ALJ's order denying Ajin access to certain documents was an abuse of discretion; and Ajin has no other adequate remedy. The Respondents contend that Ajin lacks a clear right to mandamus relief because the ALJ has broad discretion over discovery matters and Ajin has an adequate alternative remedy: further administrative review of the ALJ's final order by the Commission and judicial review by the Eleventh Circuit or D.C. Circuit.

   1. **Clear Right to Relief Requested**

Ajin argues that the ALJ's order denying Ajin permission to depose Ms. Kizer and Mr. Shea "disregards the responsibility to follow precedent in the circuit"—here, the Eleventh Circuit—"where the violation occurred." (Doc. 9 at 24). Ajin contends that *Akridge* "makes clear that although ALJs have discretion to deny depositions of certain witnesses when a 30(b)(6) witness is available, the opposite is true when the official bears responsibility for key facts." (*Id.*). Ajin further contends that the ALJ erred in denying the depositions outright on privilege grounds, rather than permit the depositions and allow "the

10

party asserting the privilege to make the appropriate objections during the deposition." (*Id.* at 22).

Ajin also argues that the ALJ abused its discretion in denying Ajin's motion to compel the Secretary to produce certain documents, arguing that, contrary to the ALJ's decision, the documents sought are neither privileged nor irrelevant. Regarding privilege, Ajin contends that the ALJ abused his discretion in concluding that the power point presentation sought in Request No. 15 was attorney-client privileged. Ajin argues that the fact the document was "screened by attorneys" is insufficient to render it privileged. Regarding relevance, the ALJ reasoned that certain documents Ajin sought were irrelevant to the issues in the case, which the ALJ described as whether Ajin violated OSHA standards and whether those violations were willful. Ajin asserts that the ALJ's description of the case is "too narrow," and the documents bear on the issues of (1) how and why OSHA decided to change the characterization of Ajin's violations from serious to willful; and (2) whether unlawful racial animus affected OSHA's issuance and characterization of Ajin's citations, which is "[c]entral to Ajin's defense." (*Id.* at 27–28).

"[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance . . . ." *Hi-Tech Furnace Sys., Inc. v. F.C.C.*, 224 F.3d 781, 789 (D.C. Cir. 2000) (alteration in original) (citation omitted). Federal regulations governing prehearing discovery confirm that the OSHRC ALJ has wide discretion in discovery matters. OSHRC has incorporated Rule 26(b)(1)'s proportionality standard under which discovery must be "proportional to the needs of the case." *Compare* 29 C.F.R. § 2200.52(b), *with* Fed. R. Civ. P. 26(b)(1). This standard gives a trial judge

11

"great discretion in defining the scope of discovery." *Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 339 F.R.D. 303, 307 (M.D. Ala.), *amended in part*, 532 F. Supp. 3d 1221 (M.D. Ala. 2020); *see also Williams v. City of Dothan*, 745 F.2d 1406, 1415 (11th Cir. 1984) (noting that "a district court has broad discretion in shaping the scope of discovery" under Rule 26). For depositions, the ALJ's discretion is arguably greater, as federal regulations *prohibit* depositions absent agreement of the parties unless the ALJ or the Commission orders a deposition based on a motion stating "good and just reasons." 29 C.F.R. § 2200.56(a); *see also* 29 U.S.C. § 661(g) (Federal Rules of Civil Procedure do not apply where OSHRC has adopted a different rule). The Eleventh Circuit reviews discovery rulings of OSHRC ALJs only for "abuse[] [of] discretion." *Edwin Taylor Corp. v. U.S. Dep't of Lab.*, 814 F. App'x 498, 503 n.1 (11th Cir. 2020) (upholding ALJ decision to deny deposition).

The discretionary nature of the ALJ's discovery rulings precludes mandamus. Section 1361 is intended to provide a remedy "only if the defendant owes [the plaintiff] a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (citation omitted). Ajin repeatedly argues that the ALJ abused his discretion in his discovery rulings, but mandamus "requires considerably more strained circumstances than does a mere abuse of discretion." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (relying on *Daiflon*).

Ajin's reliance on *Akridge* for the proposition that it has a clear right to the depositions is misplaced. In *Akridge*, the Eleventh Circuit held that the district court abused its discretion in

12

denying the plaintiff the opportunity to depose a high-ranking officer of the defendant employer. 1 F.4th at 1278. Critically, the Eleventh Circuit reviewed a discovery ruling on appeal from a final judgment and did not apply the more stringent mandamus standard applicable here. Additionally, the Eleventh Circuit viewed the district court's ruling through the lens of the Federal Rules of Civil Procedure, which are construed "liberally to allow for robust discovery," *id.* at 1276, not OSHRC's rule, which *prohibits* depositions absent the parties' agreement unless the ALJ or the Commission decides to order the deposition based on "good and just reasons," 29 C.F.R. § 2200.56(a). Moreover, assuming without deciding that the Eleventh Circuit would reverse the ALJ's decision not to allow Ajin's requested depositions as inconsistent with Eleventh Circuit precedent, "a party is not entitled to mandamus merely because it shows evidence that, on appeal, would warrant reversal." *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003).

With respect to the ALJ's decision that a particular document Ajin sought was attorney-client privileged, Ajin quarrels with the grounds for the ALJ's decision. However, Ajin's argument falls short of showing a clear right to the document such that mandamus relief is warranted. With respect to the ALJ's decision that certain documents Ajin sought were irrelevant, Ajin's arguments that the ALJ abused his discretion are insufficient to warrant mandamus relief. *See Heckler*, 466 U.S. at 616; *Daiflon*, 449 U.S. at 36. The Court also observes that Ajin did not mention unlawful racial animus in its motion to compel to the ALJ. (*See* Doc. 9-7 at 13–19). Instead, Ajin argued that the documents sought were "relevant to a principle on which [the Secretary] has the burden of proof—the characterization of any violation in the citations that are the subject of this action." (*Id.* at 16–18). Ajin's failure to present the racial animus argument to

13

the ALJ further undermines Ajin's entitlement to mandamus relief on the basis of the ALJ's purportedly erroneous relevance determination. However, even if Ajin had presented this argument to the ALJ and the ALJ still denied Ajin access to the documents, the ALJ's ruling would still at most be an abuse of discretion, which does not warrant mandamus relief.

Finally, Ajin argues that this case presents exceptional circumstances justifying mandamus relief because the ALJ's discovery rulings amount to a serious abuse of power. Specifically, Ajin argues that the ALJ's disregard of Eleventh Circuit precedent "as relevant and applicable as *Akridge*" is a serious abuse of power that this Court should remedy immediately. (Doc. 9 at 35). The Court is not persuaded. It does not follow from *Akridge* that an agency ALJ commits a serious abuse of power when he, in his discretion, refuses to allow depositions of high-ranking officials. Moreover, even assuming the ALJ's decision was in contravention of Eleventh Circuit precedent, Ajin has failed to persuade the Court that this is sufficient to constitute a serious abuse of power justifying mandamus. Ajin cites *Suarez-Valdez v. Shearson Lehman/Am. Ex., Inc.*, 858 F.2d 648, 649 n.2 (11th Cir. 1988), for the proposition that an order in contravention of precedent warrants mandamus relief. In *Suarez-Valdez*, the district court stayed its trial pending arbitration but ordered the parties to undergo discovery pursuant to the Federal Rules of Civil Procedure. *Id.* at 649. The Eleventh Circuit granted mandamus relief and ordered the district court to vacate the portion of its decision allowing for discovery. *Id.* The Eleventh Circuit explained that the "district court *has no discretion* in determining which arbitration agreements should be enforced because the Supreme Court has said that all such agreements should be enforced," and the district court's refusal to stay discovery contravened this precedent. *Id.* at 629 n.2 (emphasis added). A situation in

14

which the district court, according to the Eleventh Circuit, had *no* discretion under applicable Supreme Court precedent, materially differs from the current situation in which the ALJ undisputedly has discretion over discovery matters (and where depositions are presumptively prohibited).  At most, Ajin could demonstrate that the ALJ abused his discretion and his discovery rulings should be reversed by a reviewing tribunal.  These are not exceptional circumstances justifying mandamus relief.

In sum, Ajin has failed to show that it has a clear right to the discovery it requested such that mandamus relief is warranted.  Accordingly, for this reason alone, Ajin has failed to demonstrate that the Court may properly exercise mandamus jurisdiction over this action.  But as will be explained further below, Ajin cannot successfully invoke this Court's mandamus jurisdiction for a second independent reason: Ajin has an adequate alternative remedy.

### 2. Adequate Alternative Remedy

Ajin contends that no other adequate remedy is available because, without its requested discovery, it will be forced to proceed without information that could reveal unlawful discriminatory motive on OSHA's part.  Ajin further contends that "[n]o relief from a late appeal can undo what is done," (doc. 9 at 31), asserting that the reviewing court cannot evaluate the impact of Ms. Kizer's and Mr. Shea's depositions if they do not testify, (*id.* at 31 n.22), and that the reviewing court cannot evaluate the impact of documents not produced.  Thus, according to Ajin, the "only available remedy . . . on appeal is a remand order, more discovery, and another round of litigation," which "will result in Ajin having the opportunity to spend more time and resources it doesn't have trying to un-do an error the ALJ shouldn't have made in the first place." (*Id.*).  Ajin also argues that it will suffer

15

"practical irreparable injury" without immediate relief because the case affects Ajin's relationships with its customers and "potentially" affects Ajin's ability to obtain future financing because Ajin will be asked whether it is subject to pending litigation.

Ajin's arguments are unavailing. When the administrative trial is over and the ALJ issues a decision, Ajin may seek review with the Commission. *See* 29 U.S.C. § 661(j); 29 C.F.R. § 2200.92(a) (on review from an ALJ's final decision, the Commission has jurisdiction "to review the entire case"). If the Commission takes no action, the ALJ's decision becomes the final order of OSHRC after thirty days. *See* 29 U.S.C. § 661(j). Ajin may then obtain judicial review of the final OSHRC order in the Eleventh Circuit or the D.C. Circuit. *Id.* § 660(a). Thus, Ajin can challenge the ALJ's discovery orders before both the Commission and the court of appeals. Consequently, Ajin has other adequate means to obtain its requested relief. *See Lifestar*, 365 F.3d at 1295 (explaining that mandamus is not appropriate "where a statutory method of appeal has been prescribed"); *see also Hoever v. U.S. Dep't of Homeland Sec.*, 637 F. App'x 565, 567 (11th Cir. 2016) (per curiam) (holding that an immigrant in removal proceedings could not obtain mandamus relief to review an immigration judge's (IJ) interlocutory orders because the immigrant had the alternative remedy of a hearing before the IJ, administrative appellate review in the Board of Immigration Appeals, and judicial review in the Eleventh Circuit).[3] It appears to the Court that Ajin seeks to invoke this Court's mandamus jurisdiction to circumvent the normal review process Congress has provided by statute, for which judicial

---

[3] While the Court recognizes that *Hoever* is nonbinding, the Court finds its analysis persuasive.

review following a *final* agency order lies either in the Eleventh Circuit or the D.C. Circuit, but not in this Court.

Ajin admits that it can appeal when the administrative trial is over, but it argues that it should not have to wait because it will be forced to expend additional time and resources to correct erroneous decisions the ALJ should not have made in the first place. Although such an appeal may require Ajin to expend additional time and resources, "it is established that the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial, and whatever may be done without the writ may not be done with it." *Bankers Life & Cas. Co. v. Holland*, 349 U.S. 379, 383 (1953) (citations omitted). "[I]nconvenience, lost time, and sunk costs of such further proceedings . . . are not considered the kind of irremediable harm that will satisfy the stringent requirements for issuing a writ of mandamus." *Maloney v. Plunkett*, 854 F.2d 152, 154–55 (7th Cir. 1988).

Additionally, the Court is not persuaded that either the case's purported effect on Ajin's customer relationships or the case's purported "potential" effect on Ajin's ability to obtain future financing renders later appellate review inadequate. While Ajin contends that the case has called "undesirable attention" to Ajin and thus impacted its relationships with customers, Ajin fails to provide specifics. Ajin does not allege that it has actually lost customers because of the citations or the administrative proceedings, nor does Ajin identify a specific threat that it will lose customers in the future. The Court does not suggest that such specifics would be sufficient to demonstrate the lack of an adequate alternative remedy; however, Ajin's failure to provide such specifics further underscores its failure to

17

demonstrate entitlement to mandamus relief. And Ajin's reference to the "potential" effect on future financing is vague and insufficient to show that later appellate review is inadequate. Moreover, even if the Court granted mandamus relief and Ajin obtained its desired discovery, the administrative case will still proceed. Thus, the Court is not persuaded that mandamus, even if warranted, would cure Ajin's purported injuries. In sum, Ajin "has not shown that it will suffer irreparable harm or demonstrable injustice if resolution is delayed until the end of the case." *In re BellSouth Corp.*, 334 F.3d at 954.

Because Ajin has failed to show either a clear right to the discovery it seeks or the absence of another adequate remedy, Ajin has failed to demonstrate that the Court has jurisdiction over this action under § 1361. *See Lifestar*, 365 F.3d at 1298; *Hakki*, 7 F.4th at 1037.

### B.  All Writs Act

Ajin also seeks to invoke this Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651. But the All Writs Act "does not create any substantive federal jurisdiction"; rather, "it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Rohe*, 988 F.3d at 1263 (citation omitted); *see also Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (explaining that the All Writs Act confines the federal court's power to "issuing process 'in aid of' its existing statutory jurisdiction" and "does not enlarge that jurisdiction"). As explained above, the Court lacks jurisdiction under the Mandamus Act. Ajin identifies no other independent basis for the Court's jurisdiction. Thus, there is no jurisdictional basis upon which the

Court could issue a writ of mandamus "in aid of" its jurisdiction. *See* 28 U.S.C. § 1651; *Rohe*, 988 F.3d at 1263. Accordingly, the Court lacks jurisdiction under the All Writs Act.

## V. CONCLUSION

For the reasons stated, the Court concludes that it lacks subject matter jurisdiction over this action. Accordingly, Ajin's Amended Petition is DISMISSED without prejudice.

A separate Final Judgment will enter.

Done this 4th day of May, 2022.

                                            /s/ Emily C. Marks
                                      EMILY C. MARKS
                                      CHIEF UNITED STATES DISTRICT JUDGE